UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>      Plaintiffs,<br>v.<br><br>HILTI, INC.,<br>      Defendant. | Case No. 14-CV-1288-JPS |
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>      Plaintiffs,<br>v.<br><br>CHERVON NORTH AMERICA, INC.,<br>      Defendant. | Case No. 14-CV-1289-JPS |
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>      Plaintiffs,<br>v.<br><br>SUNRISE GLOBAL MARKETING, LLC,<br>      Defendant. | Case No. 14-CV-1290-JPS |

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>                        Plaintiffs,<br>v.<br><br>TOOLTECHNIC SYSTEMS LLC,<br><br>                        Defendant. | Case No. 14-CV-1294-JPS |
| MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,<br><br>                        Plaintiffs,<br>v.<br><br>POSITEC TOOL CORPORATION and POSITEC USA, INC.,<br><br>                        Defendants. | Case No. 14-CV-1295-JPS<br><br><br><br>ORDER |

In the above-captioned cases, Snap-on Incorporated ("Snap-on") filed identical motions to intervene and motions to disqualify the law firm DLA Piper LLP from representing the plaintiffs.[1] The motions are now fully briefed and ready for disposition. After careful consideration, the Court denies without prejudice Snap-on's motions to disqualify DLA Piper and denies the motions to intervene as moot.

---

[1] It may be very confusing to cite to the docket sheets in each of the separate cases. As such, the Court will do so sparingly and only where absolutely necessary.

1.  FACTUAL AND PROCEDURAL BACKGROUND[2]

The plaintiffs filed eight separate cases in this Court on October 14, 2014, alleging patent infringement against several defendants, including: Richpower Industries Inc., Hilti, Inc., Chervon North America, Inc., Sunrise Global Marketing, LLC, Max USA Corp., Tooltechnic Systems LLC, Positec Tool Corporation and Positec USA, Inc., and Snap-on Incorporated. (Case Nos. 14-CV-1286, 14-CV-1288, 14-CV-1289, 14-CV-1290, 14-CV-1292, 14-CV-1294, 14-CV-1295, 14-CV-1296 respectively.).[3] The plaintiffs allege that the defendants infringed the '290 patent, the '173 patent, and the '510 patent. The plaintiffs allege infringement of two additional patents, the '257 patent and '167 patent, in their cases against defendants Chervon and Positec. All of the patents-in-suit relate to alleged inventions in the area of Lithium-ion ("Li-Ion") powered handheld cordless power tools and related technologies for controlling and charging battery packs for such tools. The same lawyers appeared for the plaintiffs in seven of the eight cases (the "DLA Piper Cases")[4] from Reinhart Boerner Van Deuren, s.c.; Morgan, Lewis & Bockius LLP; and DLA Piper. DLA Piper did not appear in the case against Snap-on, Case No. 14-CV-1296.

Snap-on is a current client of DLA Piper and has been a client for approximately twenty years. (Docket #16-1, Declaration of Irwin M.

---

[2]The parties do not appear to dispute the underlying facts.

[3]After the filing of the present motions, defendants Richpower Industries Inc. and Max USA Corp. filed joint stipulations with the plaintiffs to dismiss the cases against them. (14-CV-1286, Docket #26; 14-CV-1292, Docket #32). As such, these defendants are no longer relevant to the motions to disqualify.

[4] For clarity, the Court notes that the "DLA Piper Cases" now refers to five of the six remaining cases as a result of the aforementioned voluntary dismissals.

Shur ("Shur Decl.") ¶ 2). DLA Piper has represented Snap-on in hundreds of matters primarily relating to obtaining, enforcing, and defending Snap-on's U.S. and international trademarks. (Shur Decl. ¶ 2). DLA Piper's representation of the plaintiffs in the other cases was not immediately apparent to Snap-on because DLA Piper did not appear as counsel for the plaintiffs in the complaint against Snap-on. (Shur Decl. ¶ 6). In early November 2014, Snap-on called its DLA Piper relationship partner, Gina Durham, to raise its concerns about the conflict.

In 2013, Milwaukee Tool approached DLA Piper about enforcing its patents. (Declaration of Sean C. Cunningham ("Cunningham Decl.") ¶ 2.). A preliminary conflicts check revealed that one of the potential adverse parties, Snap-on, was a current client of DLA Piper. (Cunningham Decl.¶ 3). The DLA Piper lawyers who represent Milwaukee Tool in the DLA Piper Cases have never performed work for Snap-on. (Cunningham Decl.¶ 3; *see also* Declaration of Erin Gibson ("Gibson Decl.") ¶ 2). Additionally, DLA Piper has not represented Snap-on in any matter involving Milwaukee Tool or its patents. (Cunningham Decl. ¶ 3). DLA Piper maintains that its attorneys representing Milwaukee Tool took appropriate measures in 2013 to ensure they were screened from anything related to Snap-on. (Cunningham Decl. ¶ 9). However, the DLA Piper attorneys who represent Snap-on were not informed of the situation until after different counsel filed the Snap-on Case on behalf of Milwaukee Tool. Snap-on's relationship partner did not know about DLA Piper's representation of Milwaukee Tool until November 2014. (Cunningham Decl. ¶ 9).

Snap-on alleges that numerous common issues of fact and law exist that make DLA Piper directly adverse to Snap-on. On December 13, 2014, the

plaintiffs proposed a stipulation to consolidate the cases because they "involve the same or similar patents [and] common questions of law and fact are pervasive." (Shur Decl., Ex. C). Additionally, Snap-on identifies other common issues, including: (1) a stay of the proceedings pending *Inter Partes Review*;[5] (2) damages related to a reasonable royalty; and (3) a permanent injunction under 35 U.S.C. § 283. Snap-on maintains that DLA Piper's disqualification is necessary because the plaintiffs' positions in all cases create direct adversity.

2. DISCUSSION

    2.1    Legal Standard

Attorneys practicing before this Court are subject to the Wisconsin Rules of Professional Conduct for Attorneys, which are adopted by the Wisconsin Supreme Court. General L.R. 83(d)(1); *see also Weber v. McDorman*, No. 00-CV-0381, 2000 WL 43237498, at *1 (W.D. Wis. Aug. 11, 2000) ("It is common practice in federal courts to apply state rules of professional conduct.").

Wisconsin Supreme Court Rule ("SCR") 20:1:7 prohibits an attorney from representing a client if that representation is directly adverse to another client:

---

[5]Since the filing of the present motion, the Court has denied the defendants' motions to stay. On February 10, 2015, the defendants filed a petition for writ of mandamus requesting that the United States Court of Appeals for the Federal Circuit vacate this Court's order denying Defendants' motions to stay. On February 19, 2015, the Federal Circuit, issued an order denying Petitioners' petition for a writ of mandamus and denying the motion. As such, the motions to stay are no longer a common issue among the related cases.

(a) Except as provided in par. (b) [involving written conflict waivers], a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Under SCR 20:1.7(b), each affected client may waive the conflict provided the client gives informed consent, confirmed in a signed writing.

As an initial matter, the Court notes it is unable to locate any specific guidance within this circuit discussing disqualification of counsel as a result of direct adversity.[6] In general, however, the Seventh Circuit has made clear that disqualification of counsel is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982) (declining to disqualify a law firm representing a party where an associate of the firm was at one time an associate member for the firm representing the adverse party). In *Freeman,* the court noted that motions to disqualify should be resolved with extreme caution because they may be used abusively as a litigation tactic. *Id* at 722. Disqualification, while protecting the "sacrosanct privacy of the attorney client relationship," at the same time "destroy[s] a relationship by depriving a party of representation of their own choosing." *Id.* As such, "'the moving [party] bears the heavy burden of proving facts required for

---

[6]Likewise, the parties' briefs on this issue discuss mainly unpublished district court cases analyzing similar professional rules from other states.

disqualification.'" *E2Interactive, Inc. v. Blackhawk Networks, Inc.,* No. 09-CV-629, 2010 WL 1981640, at *4 (W.D. Wis. May 17, 2010) (quoting *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 794 (2d Cir. 1983)); *see also Commonwealth Ins. Co. v. Stone Container Corp.,* 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001).

    2.2  Analysis

  Snap-on argues that DLA Piper must be disqualified from representing the plaintiffs in this litigation. The parties do not dispute that Snap-on is a current client of DLA Piper. And, Snap-on recognizes that DLA Piper is not representing the plaintiffs in the Snap-on Case, No. 14-CV-1296. Nevertheless, Snap-on argues that DLA Piper's representation of the plaintiffs in the related cases creates direct adversity between DLA Piper and Snap-on, which requires disqualification. Thus, the issue before the Court is whether there exists direct adversity between Snap-on and the plaintiffs' positions in the related cases. As discussed in detail below, although this is a close question, the Court finds no direct adversity and, thus, will deny the motions for disqualification.

  The parties each rely on various, non-binding cases—with Snap-on analogizing the present facts to cases finding direct adversity and the plaintiffs to cases finding no direct adversity. As such, the Court finds it helpful to briefly summarize these cases, noting similarities and differences to the present case where appropriate.

  Snap-on cites to *Arrowpac Inc. v. Sea Star Line, LLC,* Nos. 3:12-CV-1180, et al., 2013 WL 5460027 at *10 (M.D. Fla. Apr. 30, 2013) as a "leading" case where direct adversity and disqualification occurred. The court in *Arrowpac* disqualified Baker & Hostetler as counsel for Sea Star, a defendant in four co-pending cases. *Id.* at *2. Although Baker did not represent Sea Star in the case in which its other clients, Nestle and YRCW, were plaintiffs, it was disqualified from representing Sea Star in the related cases because Baker

was "impermissibly acting directly adverse to the interests of Nestle and YRCW." *Id.* The court's ruling relied on the history of the cases (with certain issues already arising) and the representations of Sea Star of what was to come. *Id.* at *10. Notably, the court pointed out that Sea Star had already indicated on multiple occasions that its next move in the litigation was filing a motion to dismiss the claims of all plaintiffs in all cases (all of which would rely in part on the same filed-rate doctrine). *Id.* Additionally, a Baker attorney already had signed a motion to dismiss Nestlé's case. *Id.* Although the court recognized that disqualification is a drastic measure, it held that the "unique factual situation" presented necessitated disqualification. *Id.*

Snap-on also cites *Rembrandt Techs., LP v. Comcast Corp.*, No. 2:05-CV-443, 2000 WL 470631, at *1 (E.D. Tex. Feb. 8, 2007), in support of finding direct adversity. Fish and Richardson ("F&R") originally appeared for plaintiff Rembrandt Technologies, LP, in two cases but not in the third, where Rembrandt sued Time Warner, an F&R client. *Id.* at *1. F&R withdrew from one of the two cases in which it had appeared, but refused to withdraw from both. *Id.* Time Warner moved to intervene and to disqualify F&R in the case in which it continued to appear for Rembrandt. *Id.* The court recognized that "the mere possibility of overlapping Markman proceedings is insufficient to show direct diversity, particularly when the trials of how the constructions will apply to accused products or conduct varies from defendant to defendant." *Id.* at *4. In the end, however, the court granted the motion to intervene and the motion to disqualify F&R and concluded that F&R did not need to appear in the case against Time Warner for it to be "directly adverse" to its client. *Id.* The court found significant the fact that a finding of infringement and an injunction issued by the court against any cable company that followed industry standards "would have a significant practical effect" on F&R's other client, Time Warner. *Id.*

Finally, Snap-on cites to *Celgard, LLC v. LG Chem, LTD*, Nos. 2014-1675, -1733, -1806, 2014 WL 7691765, at *1 (Fed. Cir. Dec. 10, 2014) (non-precedential order). In *Celgard*, Jones Day had appeared for Celgard to enforce a preliminary injunction Celgard had obtained against suppliers of lithium batteries. *Id.* at *1. The complaint had named only the battery supplier and its affiliated companies, not Apple, a long-time client of Jones Day. *Id.* The court granted Apple's motions to intervene and to disqualify, finding direct adversity because:

> Apple faces not only the possibility of finding a new battery supplier, but also additional targeting by Celgard in an attempt to use the injunction issue as leverage in negotiating a business relationship. Thus, in every relevant sense, Jones Day's representation of Celgard is adverse to Apple's interests.

*Id.* at *2.

In contrast, the plaintiffs analogize the present situation to three cases where courts have found no direct adversity and denied the motions to disqualify. In *Multimedia Patent Trust v. Apple Inc.* ("*MPT*"), No. 10-CV-2618, 2011 WL 1636928, at *1, the Quinn Emmanuel ("Quinn") law firm represented MPT in a patent case against several defendants. *Id.* Using different counsel, MPT filed a separate case in the same court against several other defendants, including DirecTV, a then-current Quinn client. *Id.* DirecTV intervened in MPT and moved to disqualify Quinn, arguing that the positions Quinn would have to advance on behalf of MPT with regard to claim construction, infringement, invalidity, licensing, damages and patent exhaustion could be adverse to DirecTV's interests in its lawsuit with MPT. *Id.* at *2. The court recognized that DirecTV's litigation would likely proceed before the allegedly conflicted counsel would take adverse positions in the second case due to the separate briefing schedule. *Id.* at *4. Additionally, the court recognized that the accused products were not the same and therefore

that Quinn could "not take any position in [the] litigation that would necessarily be adverse to DirecTV." *Id.* at *3. The court held that any potential conflict was "speculative" and there was no direct adversity requiring disqualification. *Id.* at *4.

In *Sumitomo Corp. v. J. P. Morgan & Co.*, No. 99 CIV. 4004, 2000 WL 145747, at *4 (S.D.N.Y. Feb. 8, 2000), Sumitomo engaged the law firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss") to represent it in a lawsuit against J.P. Morgan involving an alleged copper trading scheme. *Sumitomo*, 2000 WL 145747, at *1. Sumitomo hired another law firm to represent it against Paul Weiss client Chase Manhattan Bank ("Chase") in a separate lawsuit involving the same trading scheme. *Id.* at *2. After the Court consolidated the Chase and J.P. Morgan cases, Chase moved to disqualify Paul Weiss from representing Sumito. *Id.* at *5. The court denied the motion to disqualify, stating:

> There is no danger that Paul Weiss'[s] participation in this case will adversely impact its representation of Chase in the other matters. The issues involved in this action are totally unrelated to the issues in the matters in which Paul Weiss represents Chase. While one can understand that Chase's in-house counsel might be unhappy that a law firm which represents it in some matters was taking a position in litigation involving another client that, if adopted, would prejudice an argument that Chase was advancing in a separate case, that does not mean that the law firm is violating a confidence of its client or engaging in unethical conduct.

*Id.* at *4.

Finally, the plaintiffs analogize this case to *Enzo Biochem, Inc. v. Applera Corp.*, 468 F. Supp. 2d 359, 367 (D. Conn. 2007), where the court denied a motion to disqualify. In *Enzo*, the law firm of Hunton & Williams ("Hunton") represented Enzo Biochem as the plaintiff in a patent case against Applera.

*Id.* at 361. Enzo also sued a different defendant, Amersham, in a separate case using different counsel. *Id.* Amersham later was acquired by a long-standing Hunton client GE. *Id.* GE intervened to disqualify Hunton and argued that the duty of loyalty prevented Hunton from representing Enzo because there was "significant overlap" between the two patent cases, and because Hunton and Greenberg Traurig lawyers regularly discussed "important issues such as claim construction." *Id.* at 360, 363. The court noted that:

> [W]hile the construction of Enzo's patents applicable to the infringement claims brought against two separate accused infringers, Amersham and Applera, implicates pretrial Markman overlap, the trials of how those constructions apply to the respective accused products or conduct are wholly separate.

*Id.* at 367. The court ultimately found no direct adversity and denied the motion for disqualification. *Id.*

Here, after careful consideration of the balance between the duty of loyalty against the right to choose one's own counsel, the Court finds no direct adversity in this case and, thus, disqualification is not warranted. The Court notes, however, that the result in this instance is far from crystal clear. The parties' briefs each cleverly highlight the factual similarities of favorable cases and shy away from any distinctions. Admittedly, there are several factual similarities between Snap-on's cited cases and the issue at hand, and the Court recognizes the various distinctions with plaintiffs' cited cases. However, the Court nonetheless finds that, after consideration of all factors, this is not a "unique factual situation" that necessitates the drastic measure of disqualification. *See, e.g, Arrowpac,* 2013 WL 5460027, at *10.

Neither the historical nor future implications that the Court took issue with in *Arrowpac,* Snap-on's "leading" case, are present here. Unlike *Arrowpac,* there is no evidence here that DLA Piper has participated in any motion brought by Milwaukee Tool against Snap-on or opposed any motion brought by Snap-on against Milwaukee Tool. Additionally, unlike *Arrowpac,* the Court here *would* need a "crystal ball to predict [the plaintiffs'] very next moves in this litigation." *Id.* at *10. Indeed, two of the seven DLA Piper cases have been dismissed voluntarily since the filing of the motions to disqualify and a third has notified the Court by a letter that it intends to settle the case. And finally, although Snap-on takes great issue with the logistical issues of future depositions—suggesting that DLA Piper would be responsible for participating and objecting on behalf of plaintiffs' witnesses for seven-eighths of the questioning while another law firm handled one-eighth (Reply, at 7) —the Court finds this concern to be speculative at best. In *Arrowpac,* there was direct evidence presented that Baker intended to participate in depositions in such a manner. *Id.* at *11. (noting that during a hearing, the Court inquired as to how Baker would handle a deposition of a CEO from Sea Star). There is no such evidence here, and the Court will not speculate as to how the parties will conduct discovery.[7] *See MPT*, 2011 WL 1636928, at *4.

Snap-on argues that *Enzo* and *Sumitomo* are not persuasive here because they were burdened by the Second Circuit's high disqualification standard. (Reply at 3-4). The Court disagrees. The Court recognizes that the

---

[7]Moreover, the Court also notes that it is unaware of the parties' discovery schedule in this matter. The cases were filed on October 14, 2014, and the scheduling conference held on January 30, 2015. Given the timing of this case and the impending dispositive motion deadlines, the Court can only presume that at least a portion of the discovery process has begun.

Second Circuit requires disqualification "only if there is a significant risk that an attorney's conduct will taint the trial." *Sumitomo*, 2000 WL 145747, at *3. However, in addressing the overarching question of whether disqualification was warranted, the courts in *Sumitomo* and *Enzo* both analyzed the same issue presented here—namely, whether direct adversity existed.[8] As such, the Court finds no reason to exclude the persuasive reasoning of *Sumitomo* and *Enzo* in its direct adversity analysis under the Seventh Circuit disqualification standard.[9] Additionally, Snap-on argues that the plaintiffs' cases are unpersuasive because the unique timing in this case—the filing of eight lawsuits, on the same day in the same court, and on the same patents—creates direct adversity. (*See* Reply at 2-3). The Court readily recognizes this distinction and agrees that these factors present a much closer call than previous cases. However, the Court declines to find that the

---

[8]Specifically, *Sumitomo* analyzed New York's Code of Professional Responsibility Rule 5-105 which "forbids a lawyer from representing a client if that representation will adversely affect the interests of another current client." *Sumitomo*, 2000 WL 145747, at *3 (quoting N.Y.Code DR 5-105(A)-(B)). *Enzo* analyzed Rule 1.7 of the Connecticut Rules of Professional Conduct which provides that a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client." *Enzo*, 468 F. Supp. 2d at 364-65 (quoting Conn. R. Prof'l Conduct 1.7 cmt.).

[9]Of course, while the Seventh Circuit standard for disqualification may not be as high as that of the Second Circuit, this does not negate the fact that the bar for disqualification remains extremely high. *See Freeman*, 689 F.2d at 721 (finding that disqualification of counsel is a "drastic measure which courts should hesitate to impose except when absolutely necessary").

coordination of these cases, even on these facts, is dispositive in a finding of direct adversity.[10]

Here, as in *Sumitomo*, DLA Piper "is not involved in attempting to establish wrongdoing by [Snap-on] or seeking a judgment that will directly impact [Snap-on]." *Sumitomo,* 2000 WL 145747, at *5. Snap-on's products are not at issue in the related DLA Piper cases and the plaintiffs do not allege that the defendants' products infringe because they comply with a technical industry standard. (Pl's Opp. at 9) (noting the distinction with *Rembrandt*). Moreover, there is no evidence that DLA Piper has performed any substantive legal work for Snap-on with respect to the patents at issue in this case. (*See* Cunningham Decl. ¶ 3). The Court agrees that, here, "the mere possibility of overlapping *Markman* proceedings is insufficient to show direct diversity, particularly when the trials of how the constructions will apply to accused products or conduct varies from defendant to defendant." *Rembrandt,* 2007 WL 470631, at *4. The Court recognizes Snap-on's concern that DLA Piper will be making arguments on behalf of the plaintiffs with respect to patent validity that are contrary to the views of Snap-on, however, this issue is one relating to the circumstances of the plaintiffs' patents and independent of the specific circumstances of Snap-on. *See Enzo,* 468 F. Supp. 2d at 367.

---

[10]The Milwaukee Tool cases have not been consolidated; rather, they have been coordinated for only pretrial purposes and not for trial. Notably, the *Sumimoto* court found that even consolidation of the actions for pretrial purposes did not create a conflict. *Sumitomo,* 2000 WL 145747, at *5 ("Upon consolidation, no conflict arises because consolidation does not merge separate lawsuits into a single action and does not make parties in one lawsuit parties in another.")

Finally, the Court declines to disqualify DLA Piper in part due to its sincere concern that disqualification motions may be used as an "abusive litigation tactic." *See Freeman*, 689 F.2d at 722. The defendants in this case have requested a stay in this case twice already, including a petition for writ of mandamus requesting that the United States Court of Appeals for the Federal Circuit vacate this Court's order denying the motions to stay, none of which were successful. Moreover, Snap-on became aware of the alleged conflict in early November 2014 (Decl. Irwin ¶ 7), however, the motions to disqualify were not filed until late January 2015, nearly three months later, and not fully briefed until March 2015, going well into the discovery period. And, although the Court recognizes that the plaintiffs are sophisticated corporate entities with in-house legal counsel and have additional representation through Reinhart, there is nonetheless a concern that DLA Piper's disqualification may prejudice the plaintiffs with the July 31, 2015 deadline for dispositive motions quickly approaching. As the parties are now well aware, this Court takes very seriously its obligation to comply with Federal Rule of Civil Procedure 1 requiring the rules to be construed and administered "to secure the just, speedy, and inexpensive determination of every action and proceeding." Thus, after considering all factors, the Court finds that Snap-on has not met its "heavy burden" of showing the necessity of disqualifying DLA Piper; thus, the balance in this case tips toward denial of the disqualification motions.

3. CONCLUSION

As discussed above, the Court finds that the drastic measure of disqualification i2 not warranted in this instance. As such, Snap-on's Motions

to Disqualify will be denied. As a result, the Court is obliged to deny the Motions to Intervene as moot.

Accordingly,

IT IS ORDERED that Snap-on's Motions to Disqualify (14-CV-1288, Docket #14; 14-CV-1289 Docket #23; 14-CV-1290, Docket #22; 14-CV-1294, Docket #22; 14-CV-1295, Docket #21)be and the same are hereby DENIED; and

IT IS FURTHER ORDERED that Snap-on's Motions to Intervene (14-CV-1288, Docket #13; 14-CV-1289, Docket #22; 14-CV-1290, Docket #21; 14-CV-1294, Docket #21; 14-CV-1295, Docket #20) be and the same are hereby DENIED as moot.

Dated at Milwaukee, Wisconsin, this 27th day of April, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge