# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MILWAUKEE ELECTRIC TOOL
CORPORATION, METCO BATTERY
TECHNOLOGIES LLC, AC (MACAO
COMMERCIAL OFFSHORE) LIMITED, and
TECHTRONIC INDUSTRIES CO. LTD.,

Case No. 14-CV-1288-JPS

                  Plaintiffs,

v.

HILTI, INC.,

                  Defendant.

---

MILWAUKEE ELECTRIC TOOL
CORPORATION, METCO BATTERY
TECHNOLOGIES LLC, AC (MACAO
COMMERCIAL OFFSHORE) LIMITED, and
TECHTRONIC INDUSTRIES CO. LTD.,

Case No. 14-CV-1289-JPS

                  Plaintiffs,

v.

CHERVON NORTH AMERICA, INC.,

                  Defendant.

---

MILWAUKEE ELECTRIC TOOL
CORPORATION, METCO BATTERY
TECHNOLOGIES LLC, AC (MACAO
COMMERCIAL OFFSHORE) LIMITED, and
TECHTRONIC INDUSTRIES CO. LTD.,

Case No. 14-CV-1295-JPS

                  Plaintiffs,

v.

POSITEC TOOL CORPORATION and
POSITEC USA, INC.,

                  Defendant.

MILWAUKEE ELECTRIC TOOL
CORPORATION, METCO BATTERY
TECHNOLOGIES LLC, AC (MACAO
COMMERCIAL OFFSHORE) LIMITED, and
TECHTRONIC INDUSTRIES CO. LTD.,

Case No. 14-CV-1296-JPS

Plaintiffs,

v.

SNAP-ON INCORPORATED,

ORDER

Defendant.

On August 5, 2015, in the above-captioned cases, the defendants filed motions to stay[1] pending completion of the U.S. Patent and Trademark Office's ("USPTO") inter partes review ("IPR").[2] The motions are now fully briefed and ready for disposition. After careful consideration, the Court will grant the defendants' motions to stay.

1.      BACKGROUND

The Court finds it helpful to begin its discussion with a general overview of the relatively new IPR process, followed by factual background specific to the above-captioned cases.

1.1      IPR Procedure

IPR is a relatively new procedure introduced by the Leahy–Smith America Invents Act ("AIA") through which the USPTO's Patent Trial and

---

[1]The Court notes that the defendants in each separate case filed their own motions to stay. However, in order to minimize redundant argument, the defendants adopted Chervon's arguments and case law citations in its brief. (Case No. 14-CV-1289, Docket #65). Similarly, the plaintiffs incorporated by reference their opposition to Chervon's motion (Case No. 14-CV-1289, Docket #74). The Court extends its sincere thanks to all parties for their efforts to avoid redundancy and conserve judicial resources.

[2]It may be very confusing to cite to the docket sheets in each of the separate cases. As such, the Court will do so sparingly and only where absolutely necessary.

Appeal Board ("PTAB") may review the patentability of one or more claims in a patent. *See* Pub.L. No. 112–29, § 6(a), 125 Stat. 284, 299–304 (2011), codified at 35 U.S.C. §§ 311–319 (2013). This mechanism replaces the previous inter partes reexamination procedure and converts the process from an examinational to an adjudicative one. *See Abbot Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting H.R.Rep. No. 112–98, pt. 1, at 46–47 (2011)). Under this new procedure, any party other than the patent owner may file a petition to institute IPR in order to establish that the identified claims are invalid under 35 U.S.C. §§ 102 and/or 103. 35 U.S.C. §§ 311(a)–(b).

The petitioner must rely "only on…prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). The patent owner may file a preliminary response, "setting forth the reasons why no inter partes review should be instituted" within three months of the petition, or may expedite the proceeding by waiving the preliminary response. 37 C.F.R. § 42.107(a)–(b). The USPTO must decide whether to institute IPR within three months of the patent owner's preliminary response, or, in the event no response is filed, by the last date on which the response could have been filed. 35 U.S.C. § 314(b).

If the USPTO institutes IPR, the proceeding is conducted before a panel of three technically-trained Administrative Patent Judges of the newly-formed PTAB. *See* 35 U.S.C. §§ 6(a)–(c), 311. The parties are permitted to take limited discovery and respond to each other's arguments; they also have the right to an oral hearing. 35 U.S.C. §§ 316(a). The PTAB must, under most circumstances, issue its final determination within one year of the institution date. 37 C.F.R. § 42.100(c). After receiving a final determination

from the PTAB, the parties have the option to appeal to the Federal Circuit. 35 U.S.C. §§ 141(c), 319.

In enacting the AIA, Congress sought "to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "to create a timely, cost-effective alternative to litigation." Changes to Implement Inter Partes Review Proceedings, Post–Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48680–01 (Aug. 12, 2012) (codified at 37 C.F.R. §§ 42.100 et seq.). To that end, IPR affords at least three advantages to the parties and the district court in any corollary civil action. First, IPR provides a path to receive expert guidance from the PTO under a more accelerated timeline than the previous inter partes reexamination procedure: petitioners must file for IPR within one year of being served with a patent infringement complaint (35 U.S.C. § 315(b)) and IPR, if instituted, will typically conclude within 18 months of the filing date. In contrast, the average time from filing to conclusion of the previous IPR procedure ranged from 28.9 to 41.7 months. *See* 77 Fed.Reg. 48680–01 at 48721. Second, the decision to institute IPR signals that at least one of the subject claims may be modified or cancelled. *See* 35 U.S.C. § 314(a) (requiring "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" in order for IPR to be instituted). This new threshold requirement presents a more stringent standard than the previous "substantial new question of patentability" and thus provides some assurance that the delay suffered as a result of IPR will be worthwhile. Third, IPR imposes an estoppel requirement that precludes the petitioner from asserting invalidity during a later civil action "on any

ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). This critical limitation results in more streamlined litigation and reduces the likelihood of inconsistent judgments.

### 1.2 Case History

The plaintiffs filed eight separate cases in this Court on October 14, 2014, alleging patent infringement against several defendants; at the time of the filing of the present motion, only four cases remained. The remaining defendants are: Hilti, Inc. ("Hilti") (Case No. 14-CV-1288), Chervon North America, Inc. ("Chervon") (Case No. 14-CV-1289), Positec Tool Corporation and Positec USA, Inc. ("Positec") (Case No. 14-CV-1295), and Snap-On Incorporated ("Snap-On") (Case No. 14-CV-1296 ) (collectively the "Related Cases").[3] The plaintiffs allege that all the defendants infringed the following patents: the '290 patent, the '173 patent, and the '510 patent. The plaintiffs also allege infringement of two additional patents—the '257 patent and '167 patent—in their cases against defendants Chervon and Positec. All of the patents-in-suit relate to alleged inventions in the area of Lithium-ion ("Li-Ion") powered handheld cordless power tools and related technologies for controlling and charging battery packs for such tools.

On January 21, 2015, Chervon, Positec and Hilti filed three petitions for IPR with the USPTO seeking to invalidate the three patents asserted in each of the Related Cases: patent '290; '173; and '510. (Defs' Exs. 12-14). Plaintiffs filed responses to these petitions on May 3, 2015. On July 31, 2015,

---

[3]Defendants Richpower Industries Inc., Sunrise Global Marketing, LLC, Max USA Corp., and Tooltechnic Systems LLC all signed stipulations for voluntary dismissal, and are no longer relevant.

Page 5 of 21

the USPTO granted all three of the petitions. The IPRs have been instituted with respect to all claims of all remaining Patents-in-Suit in the Related Cases. In its decisions, the USPTO found that there was a "reasonable likelihood" that every claim of the '290, '173, and '510 Patents is invalid and unpatentable. (Defs' Exs. 1–3, USPTO Institution Decisions). Under the USPTO's statutory schedule, final written decisions on the IPRs are expected by July 31, 2016. 35 U.S.C. § 316(a)(11). Ultimately, when the USPTO issues final written decisions in these IPRs, Chervon, Hilti, and Positec will be bound by the estoppel provision 35 U.S.C. § 315(e)(2) that precludes them from challenging the validity of the patents on any ground that could have been reasonably raised in the IPRs.[4]

Additionally, on May 6 and May 22, 2015, Hilti and Snap-On, respectively, filed five more IPR petitions against Milwaukee Tool's patents. The USPTO will issue decisions on the institution of these IPRs by November 18, 2015, and December 5, 2015, respectively. 35 U.S.C. § 314(b); 37 C.F.R. § 42.107(b).

2.    LEGAL STANDARD

A district court's power to stay a proceeding is "'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Texas Indep. Producers & Royalty Owners Assoc. v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This authority extends to patent cases in which review by the USPTO has

---

[4]Defendants note that Snap-On has also agreed to be estopped in its litigation from asserting the prior art combinations used in the January 2015 IPR petitions after the USPTO issues its final written decisions. (Defs' Opening Br. at 5-6).

been requested. *See Black & Decker Inc. v. Positec USA, Inc.,* No. 13–3075, 2013 WL 5718460, *3 (N.D. Ill. Oct. 1, 2013) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988)). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *Evolutionary Intelligence, LLC v. Millennial Media, Inc.*, No. 5:13–CV–4206, 2014 WL 2738501, at *2 (N.D. Cal. June 11, 2014).

Because IPR is a relatively new process, the Federal Circuit has not yet spoken on the appropriate standard for evaluating motions to stay a related district court action while IPR involving the same patent or patents is pending. District courts have continued to apply the framework governing stays with respect to the administrative process that preceded IPR, inter partes reexamination. *SurfCast, Inc. v. Microsoft Corp.,* No. 2:12-CV-333-JDL, 2014 WL 6388489, at *1 (D. Me. Nov. 14, 2014). In deciding whether to stay a patent case pending IPR, courts have typically considered three factors:

> (1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

*ACQIS, LLC v. EMC Corp.*, No. 14-CV-13560-ADB, 2015 WL 3617106, at *4 (D. Mass. June 10, 2015) (quoting *SurfCast*, 2014 WL 6388489, at *1.

3.      DISCUSSION

   3.1      Stage of Litigation

   This factor requires that the Court consider whether a stay is appropriate in light of the progress of litigation in a case. The Related Cases were filed nearly one year ago. As noted above, the Court's analysis under

this prong often includes whether discovery is complete and whether a trial date has been set. *Id.*

### 3.1.1   Discovery

To be sure, it is not true, as asserted by defendants, that the cases are in their "early stages." (Defs' Opening Br. at 14). By August, when the defendants filed the motion to stay, the case was approximately nine months old and, by now, approximately one year old. As detailed below, the parties have conducted a considerable amount of discovery. However, it is equally not true, as asserted by the plaintiffs, that this case is anywhere near the finish line for discovery, and other pretrial matters. (Pls' Opp. at 6-8). And, rather ironically, both sides blame each other for any delays in discovery. Like many things in life, and particularly in complex legal issues, here the answer lies somewhere in the middle of the parties' arguments.

The plaintiffs argue that discovery is at an "advanced" stage because it began approximately seven months ago, and the plaintiffs have: (1) produced more than 294,000 pages of documents; (2) answered 20 interrogatories; (3) produced two key inventors for three days of depositions; and (4) provided 470 pages of infringement claim charts, which detail their infringement case and its claim construction positions. (Pls' Opp. at 7). Further, the plaintiffs note that Chervon has agreed to the deposition dates for six of its witnesses, responded to 1,155 requests for admission, responded at least partially to 113 document requests, and responded to, at least partially, 19 interrogatories. (Pls' Opp. at 7). The plaintiffs agree that "some fact discovery and expert discovery remain to be completed," but argue that discovery is not further along only due to the defendants delay in the production of documents. (Pls' Opp. at 7).

In contrast, the defendants argue that a significant amount of discovery remains, noting that opening expert reports are not due until October 6, 2015, and fact discovery does not close until December 5, 2015. (Defs' Opening Br. at 10) (citing Fed. R. Civ. P. 26(a)(2)(D)(i), (3)(B)). Additionally, the defendants argue that discovery is ongoing because only two depositions have been taken by defendants, and the plaintiffs have not noticed or taken any depositions. (Defs' Opening Br. at 10). The defendants also argue that any delay in the Related Cases has been the plaintiffs' own doing, and point to the fact that discovery would be completed by now, but for the plaintiffs' own refusal to cooperate with the previously agreed upon end of discovery prior to the July 31, 2015 summary judgment deadline. (Def's Reply at 5).

In considering the parties' arguments, the Court finds that the stage of discovery in this case weighs slightly in favor of granting a stay. The Court recognizes the substantial amount of discovery completed to date; however, it also recognizes that a significant amount of expert and fact discovery remains, particularly as to the taking of depositions. The Court now turns to address the second consideration of the stage of the proceedings relating to trial.

### 3.1.2   Trial

The parties do not dispute that the Related Cases are currently set for a jury trial on January 4, 2016. The plaintiffs, thus, argue that this factor weighs heavily against granting a stay, and rely on several cases where courts denied a stay where a trial date was set, including:  *Unifi Scientific Batteries, LLC v. Sony Mobile Commcn's AB*, NO. 6:12-CV-224-JDL, 2014 WL 4494479 (E.D. Tex. Jan. 14, 2014) (denying motion to stay pending IPR where

court had set trial date that would occur before IPRs would be completed); *SurfCast, Inc. v. Microsoft Corp.*, 6 F. Supp. 3d 136, 143 (D. Me. 2014) ("If the parties proceed briskly to dispositive motions and trial, the Federal Circuit will have the advantage of the outcome in this Court when considering the result of the IPR process."). (Pls' Opp. at 8).

The Court well recognizes that many other courts have found that the setting of a trial date weighs heavily in denying the grant of a stay. In this case, however, the Court does not find this factor alone to be persuasive one way or another. Unlike many other district courts, it is the common practice of this Court to set trial dates in all civil cases at the outset, during the first scheduling conference. Indeed, the Court announced the trial date in the Related Cases on January 29, 2015, approximately eight months ago, during its standard Federal Rule of Civil Procedure 16 scheduling conference. For this reason alone, the fact that trial is set in this case adds little to the Court's analysis.

The more important factor to consider is whether the cases have actually gone to trial. (Defs' Reply at 6). In *SmartFlash LLC v. Samsung Elecs. Co., Ltd.*, No. 15-1701, 2015 WL 4603820 (Fed. Cir. July 30, 2015) (nonprecedential), the Federal Circuit recently considered whether two separate cases against Apple and Samsung, respectively, should be stayed pending covered-business-method-review ("CBM") proceedings, which, like IPRs, were created by the AIA. *Id.* at *3. Ultimately, the Federal Circuit upheld the denial of a stay in the *Apple* case, but, in contrast, found that the district court erred in denying a stay of the *Samsung* case, even after giving deference to the district court's discretion. *Id.* at *10. In doing so, the court noted that the "critical distinction" between the two cases was that the

*Samsung* case had yet to go to trial. *Id.* at *9. The court further recognized that the complexities and cost of a trial, including various witnesses from overseas requiring interpreters, weighed in favor of a stay. *Id.*[5]

Similarly here, none of the Related Cases have gone to trial, and the defendants anticipate requiring witnesses from overseas who will require interpreters. (Defs' Opening Br. at 11-12). Notably, the Related Cases will require not one, but four, trials, since the Related Cases have not been consolidated; rather, they have been coordinated for only pretrial purposes. Additionally, although the parties' motions for summary judgment are now fully briefed,[6] the Court has yet to resolve any of the issues. In light of the foregoing, there remains considerable work to be done in the Related Cases, particularly in relation to the numerous outstanding trials, and the Court, therefore, finds this factor to weigh in favor of granting a stay.

### 3.2    Simplification of Issues

In the Court's view, the most important factor bearing on whether to grant a stay in this case is the prospect that the IPR proceeding will result in simplification of the issues before the Court. The Court finds that there is a significant possibility that IPR will simplify the infringement issues for trial.

---

[5]The plaintiffs argue that *SmartFlash* is distinguishable because it did not involve IPR proceedings, but rather covered-business-method-review ("CBM") proceedings, a related post-grant review procedure created by the AIA. (Pls' Opp. at 11-12). The Court does not find this line of reasoning to be persuasive because nothing in the Federal Circuit's analysis suggests it based its decision on the fact that the *Samsung* case involved CMB as opposed to IRP proceedings, and the factors in considering a stay are nearly identical.

[6]The summary judgment motions were not fully briefed on August 5, 2015, when the defendants filed the motions to stay.

The plaintiffs contend that "the only scenario under which the IPRs will streamline the issues in this case is if the PTAB finds that <u>all</u> of the asserted claims are invalid, and those decisions are upheld on appeal." (Pls' Opp. at 11) (emphasis in original). This assertion, however, is incorrect; the question is merely whether the issues will be simplified, and *not* whether the entire case will be resolved. *See Serv. Solutions U.S. LLC v. Autel. US Inc.*, No. 13-10534, 2015 WL 401009, at *3 (E.D. Mich. Jan. 28, 2015) (finding that "an IPR review need not dispose of a case completely to simplify the issues of a case"); *see also Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513-RMW, 2014 WL 819277, at *5–6 (N.D. Cal. Feb. 28, 2014) (rejecting proposition that IPRs must "eliminate all of the issues in this litigation").

Indeed, the plaintiffs' suggestion is but one of *several* ways the issues may be simplified by the IPR proceeding. For example, if only some claims are invalidated or canceled, then the Court and the parties will not have to address the validity or infringement of those claims. *See Asetek Holdings, Inc. v. Cooler Master Co., Ltd.,* No. 13–CV–00457–JST, 2014 WL 1350813, at *3 (N.D. Cal. Apr. 3, 2014) ("[O]rdinarily, if any of the asserted claims are canceled [by review] the ordeals of claim construction and trial will become unnecessary for those claims.") (citations and internal alterations omitted*); Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *4 (N.D. Ill. May 29, 2014) ("If the USPTO cancels all or some of the asserted claims, then the issue of infringement for those claims would no longer exist.").

Moreover, even in the event that none of the claims are invalidated, the Court will still benefit from the USPTO's expertise in evaluating the scope and validity of those claims. *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, *4 (E.D. Tex. Mar. 11, 2015) (stating

that IPR was designed to "simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation."); *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, 4 (D. Del. Jan. 11, 2013) ("[E]ven if certain (or all) of the claims are ultimately confirmed, the Court will likely benefit…from the PTO's analysis of prior art that is later presented to the Court.").

The plaintiffs take issue with the fact that "there is little that can be accurately predicted about the eventual outcome of an IPR or any simplification that might result." (Pls' Opp. at 13). While that is certainly true, it is also the case in *every* instance when IPR is initiated, as it is impossible to predict with certainty the result. What is more persuasive to the Court, however, is the fact that a panel of three technically-trained judges of the USPTO's Patent Trial and Appeal Board found a "reasonable likelihood" that every claim of the Patents-in-Suit is invalid. Moreover, as the defendants point out, as of February 2015, the USPTO reported that all reviewed claims were found unpatentable in 63 percent of its final decisions, and that some of the claims were found unpatentable in another 21 percent of the final decisions, such that some or all reviewed claims were held unpatentable 84 percent of the time. (Defs' Opening Br. at 2 n.3) (citing USPTO, PATENT PUBLIC ADVISORY COMMITTEE QUARTERLY MEETING, PTAB UPDATE at 15, http://www.uspto.gov/sites/default/files/documents/20150219_PPAC_PTAB_Update.pdf (Feb. 19, 2015)). Given these considerations, the likelihood of simplification of at least some of the issues in this case is high, and certainly cannot be described as merely speculative.

For all these reasons, the Court finds that there is a significant possibility that the IPR will simplify the infringement issues for trial. Thus, the second factor weighs heavily in favor of granting a stay.

### 3.3    Undue Prejudice or Clear Tactical Disadvantage

The last factor to be considered is whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Advanced Micro Devices, Inc. v. LG Elec., Inc.*, No. 14-CV-01012-SI, 2015 WL 545534, at *4 (N.D. Cal. Feb. 9, 2015).

#### 3.3.1    Prejudice

First, in addressing the question of prejudice, "'delay inherent in the reexamination process does not constitute, by itself, undue prejudice.'" *ESCO Corp. v. Berkeley Forge & Tool, Inc.,* No. C 09–1635 SBA, 2009 WL 3078463, at *3 (N.D. Cal. Sept. 28, 2009) (quoting *SKF Condition Monitoring, Inc. v. SAT Corp.,* 2008 WL 706851, at *6 (S.D. Cal. Feb. 27, 2008)); *accord Telemac Corp. v. Teledigital, Inc.,* 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) ("[T]he likely length of reexamination is not, in itself, evidence of undue prejudice…."). Thus, the Court recognizes that granting a stay will delay the plaintiffs' cases; however, this factor alone is insufficient to meet the prejudice standard.[7]

The heart of the plaintiffs' prejudice argument is that a stay will prejudice them because they are direct competitors with the defendants. (Pls' Opp. at 15). "It is well-established that courts are generally reluctant to stay proceedings where the parties are direct competitors." *ImageVision.Net, Inc. v. Internet Payment Exch.*, No. 12-CV- 054, 2013 WL 663535, at *6 (D. Del. Feb.

---

[7]The Court notes that contrary to the plaintiffs' assertion, granting a stay will not "amount to an indefinite denial of [the plaintiffs'] access to the courts," which is hyperbole, to say the least. (*See* Pls' Opp. at 14).

25, 2013) (internal quotation marks omitted); *see also Davol, Inc. v. Atrium Med. Corp.*, No. 12-958-GMS, 2013 WL 3013343, at \*3 (D. Del. June 17, 2013) ("An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors."); *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011) (recognizing the "particular importance" of the fact that the parties are "direct competitors"). The plaintiffs argue that they are direct competitors with the defendants, and that defendants have "taken, and continue[] to take, market share away" from them by infringing on their patents. (Pls' Opp. at 17). The plaintiffs further argue that because the parties are direct competitors, the fact that the plaintiffs chose not to seek a preliminary injunction does not mean a stay is harmless. *See Davol, Inc.,* 2013 WL 3013343, at \*4 ("[W]here the question of direct competition remains unanswered, courts have sometimes considered whether the plaintiff sought a preliminary injunction." (internal quotation marks and edits omitted)); *SenoRx, Inc.,* 2013 WL 144255, at \*8 ("[W]ith the fact of direct competition not in serious dispute, the Court does not find *SenoRx's* litigation posture, including its decision not to file for a preliminary injunction, to be particularly telling.").

The defendants passingly suggest, in a footnote, that the parties may not be direct competitors, stating, "the accused products are sold by third party entities who are not named as defendants in this action." (Defs' Reply at 12 n.5).

The defendants further argue that regardless of whether the parties are competitors, the fact that the plaintiffs did not seek a preliminary injunction in any of the Related Cases undermines any sense of urgency. (Defs' Reply at 12). In *VirtualAgility, Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307

(Fed. Cir. 2014), where the parties were direct competitors, the Federal Circuit found that a patentee's failure to seek "preliminary injunctive relief belie[s] its claims that it will be unduly prejudiced by a stay." *Id.* at 1320. The court recognized that the patentee's arguments for not moving for a preliminary judgment—that it was a small business with limited resources and that the litigation process would move fast enough to make it unnecessary—as valid, however, nonetheless found that the fact that it "was not worth the expense" to ask for a preliminary injunction contradicted the patentee's assertion that it needed injunctive relief as soon as possible. *Id.* at 1319. The court ultimately found that, at best, the prejudice factor weighed slightly against a stay. *Id.* at 1318.

To be sure, the record is far from clear on the issue of whether the parties are in fact "direct competitors." The plaintiffs, for their part, simply assert that they are direct competitors, but provide no factual support for this assertion. (Pls' Opp. at 15-18). The defendants, however, do little to dispute that they are in fact direct competitors—noting only that they do not actually sell the products. (Defs' Reply at 12 n.5). Considering the defendants' lack of any significant dispute, the Court can only assume that the parties are direct competitors for purposes of its analysis;[8] thus, the Court finds this consideration to weigh in favor of denying a stay.

---

[8] The Court notes that there is no evidence in the record as to number of competitors in the parties' market, which may affect the prejudice analysis. *Air Vent, Inc. v. Owens Corning Corp.*, No. 10-CV-1699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012) ("the fact that there are other competitors in the market undermines [the] assertion of undue prejudice because of loss of market value."); *Nests Oil OBJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984 *3 (D. Del. July 2, 2013)("The presence of multiple active firms in the relevant market…may decrease the likelihood of such harm befalling the plaintiff").

On the other hand, as in *VirtualAgility,* the plaintiffs' failure to file for a preliminary injunction at least partially "belie[s]" their claim that they will be unduly prejudiced by a stay. 759 F.3d at 1320. To be honest, that failure is more egregious in this case: unlike in *VirtualAgility,* there is nothing in the record, here, as to why the plaintiffs did not seek a preliminary injunction. The best the plaintiffs can do is vaguely assert that the decision "could be made for a number of reasons having nothing to do with irreparable harm." (Pls' Opp. at 18).

Moreover, the Court has some doubt regarding the plaintiffs' true urgency in resolving this matter; indeed, the plaintiffs may have been aware of at least some of the defendants' alleged infringement as early as 2011, when they sent a letter to Chervon offering a license and providing "a complete list of all patents and pending applications in the li-ion field owned by the TTI Group worldwide." (Defs' Ex. 5, 10/31/2011 TTI Letter). When Chervon asked why it "require[d] a license for any specific patent(s) or patent application(s)," the plaintiffs never responded, and instead remained silent for nearly three years until they filed suit. (Defs' Ex. 6, 12/21/2011 Chervon Letter.).

In sum, the Court finds that, at best, the prejudice factor weighs only slightly in favor of denying a stay.

### 3.3.2   Clear Tactical Advantage

The Court finds that neither the timing of the request for IPR, nor the timing of the stay request, indicate that the defendants seek an unfair tactical advantage. The defendants requested IPR on January 21, 2015, approximately three months after the plaintiffs initiated the Related Cases. (Defs' Exs. 12-14, January 2015 Petitions). The plaintiffs argue that the defendants "could have

filed IPR petitions when the process first became available in September 2012." (Pl. Opp. at 15); however, the plaintiffs cite no authority that a defendant must or should seek IPR before litigation. Although it may have been helpful to file the IPR petitions earlier, the Court cannot say that a three-month delay suggests the defendants sought an unfair tactical advantage. *See, e.g., VirtualAgility,* 759 F.3d at 1319 (upholding the district court's finding of no "'dilatory motive'" when defendant filed its CMB petition less than four months after initiation of suit); *Destination Maternity Corp. v. Target Corp.,* 12 F. Supp. 3d 762, 766–68 (E.D. Pa. 2014) (finding four-month delay not unreasonable); *Software Rights Archive, LLC v. Facebook, Inc.,* No. 12–3970, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013) (finding timing reasonable where petitions for IPR were filed almost a year after litigation began, but only four months after the plaintiff had identified the asserted claims).

As to the timing of the stay request, the parties do not appear to dispute that the defendants filed the motions to stay within a reasonable time. The USPTO granted the petitions for IPR on July 31, 2015, and the defendants promptly filed their current motion to stay on August 5, 2015.[9] The plaintiffs speculate that future waves of IPR applications and motions to stay may further delay the litigation. (Pls' Opp. at 14). However, the Court can only rule based on the present record before it, and does not find that

---

[9]The defendants filed their first motion to stay prior to the January 29, 2015 scheduling conference, when the case was indeed in its infancy. The Court denied the motion to stay, among other reasons, because the USPTO had not reached a decision on whether to grant or deny the petitions for IPR. On February 10, 2015, the defendants filed a petition for writ of mandamus requesting that the United States Court of Appeals for the Federal Circuit vacate this Court's order denying Defendants' motions to stay. On February 19, 2015, the Federal Circuit issued an order denying Petitioners' petition for a writ of mandamus and denying the motion.

anything in the records suggests that the defendants seek an unfair tactical advantage.

In light of the foregoing, the Court finds that the third factor weighs, at best, only slightly against granting a stay.

### 3.4    Other Considerations

The plaintiffs raise various other issues in regards to their argument to deny a stay, which the Court will briefly address. To begin, the plaintiffs' opposition brief begins with a pull-at-the-heartstrings type argument, asserting that the Court should deny the motions to stay, in short, because they have proof that Chervon willfully infringed the plaintiffs' patents. (*See* Opp. at 1-3). The parties hotly contest the significance of certain emails as to the question of infringement. However, the plaintiffs cite no authority, nor is the Court aware of any, that supports the proposition that the merits of a case should be considered in deciding a motion to stay a patent case pending IPR. As such, the Court need not address this line of argument.

Finally, the Court will address the plaintiffs' argument as related to the Seventh Amendment guaranteeing the plaintiffs a jury trial on its intellectual property rights.  The plaintiffs argue that: (1) a stay would interfere with the exclusive jurisdiction of this Court to adjudicate their patent rights; and (2) that a stay would effectively deprive the plaintiffs of their Seventh Amendment right to a jury trial. (Pls' Opp. at 19-22). The plaintiffs are essentially asking this Court to find the IPR process itself to be unconstitutional; arguing that  "the authority to adjudicate the validity of a patent is vested solely in Article III courts," and that the validity of a patent must be adjudicated by a jury rather than an administrative body." (*See* Pls' Opp. at 19–22). However, at this juncture, the Court finds it neither the time nor the place for the plaintiffs' argument, because they have failed to exhaust their administrative remedies. *See Cooper v. Lee*, No.

Case 2:14-cv-01288-JPS   Filed 10/02/15   Page 19 of 21   Document 72

1:14–CV–00672–GBL–JFA, 2015 WL 686041, at *4 (E.D. Va. Feb. 18, 2015) (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)). If Plaintiffs truly believe that IPR is unconstitutional, they can appeal the USPTO's final written decisions directly to the Federal Circuit. *Id.* at *4.

4.      CONCLUSION

In sum, the Court finds that the first factor weighs in favor of granting a stay,  the second factor weighs heavily in favor of granting a stay, and the third factor weighs only slightly against granting a stay. After considering and weighing these factors, the Court concludes that staying the case to await the USPTO's final decision is the preferable course. As such, the Court will grant the defendants' motions to stay the Related Cases until completion of the instituted IPR proceedings, Nos. IPR IPR2015-00595,IPR2015-00596, and IPR2015-00597. The parties shall report back to this Court within ten (10) days of the issuance of Final Written Decisions by the USPTO in these proceedings. Finally, in light of the stay, the Court finds it prudent to deny the pending motions in the Related Cases, all *without prejudice,* and the parties will be free to re-file such motions upon a lifting of the stay.

Accordingly,

IT IS ORDERED that the defendants' motions to stay:

14-CV-1288, Docket #44;

14-CV-1289, Docket #64;

14-CV-1295, Docket #52; and

14-CV-1296, Docket #35,

be and the same are hereby GRANTED; the Court will grant a stay in the Related Cases until completion of the instituted IPR proceedings, Nos. IPR IPR2015-00595, IPR2015-00596, and IPR2015-00597;

IT IS FURTHER ORDERED that the parties shall report back to this Court within ten (10) days of the issuance of Final Written Decisions by the USPTO in these proceedings;

IT IS FURTHER ORDERED that the pending motions:

14-CV-1288, Docket #35, #40, #59, #70;

14-CV-1289 Docket #55, #59 #69, #76, #92, #107, #110;

14-CV-1295, Docket #42, #47; and

14-CV-1296, Docket #26, #31, #39, #42, #74, #78, #81,

be and the same are DENIED without prejudice; and

IT IS FURTHER ORDERED that the parties' motions to restrict documents to case participants only:

14-CV-1288, Docket #34, #39, #48, #57, #61, #65, #69;

14-CV-1289, Docket #54, #56, #68, #73, #80, #83, #95, #99, #103, #109;

14-CV-1295, Docket #41, #46, #58, #62, #70, #74; and

14-CV-1296, Docket #27, #30, #38, #41, #44, #47, #50, #53, #56, #62, #66, #70, #75, #80,

be and the same are hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 2nd day of October, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Case 2:14-cv-01288-JPS   Filed 10/02/15   Page 21 of 21   Document 72